**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:24-cr-00090 (TNM) |
| v. : | |
| : | |
| SARAH KATHLEEN HOLMES, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Sarah Kathleen Holmes has pleaded guilty to Class B misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct in a Capitol building or grounds) (Count One) and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). For the reasons set forth herein, the government requests that this Court sentence Holmes to 30 days' incarceration on Count One and 36 months' probation on Count Two. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

**I.  Introduction**

Defendant Sarah Kathleen Holmes, 59, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020

1

Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Holmes pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). The government's recommendation is supported by Holmes' decisions to: (1) ignoring repeated signs and instructions that she was not permitted to enter and remain in the Capitol building; (2) bring a minor with her into the Capitol building during a violent riot; (3) flatly lie to the FBI, telling agents that she did not enter the Capitol Building; and (4) her continued lack of remorse for her actions on January 6; and (5) give an interview to a reporter while inside the building, before making a public speech on the Capitol steps.

The Court must also consider that Holmes' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for her actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Holmes's crime support a sentence of 30 days' incarceration, 36 months' probation, 60 hours of community service, and $500 restitution in this case.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol.  *See* Statement of the Offense 1-7.

*Defendant Holmes's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Holmes and a teenaged relative traveled to Washington D.C. from Miami, Florida, to protest the certification of the 2020 Electoral College vote. Holmes entered the U.S. Capitol building, bringing the minor with her, through the Senate Wing door at approximately 2:22 p.m., less than 10 minutes after rioters' first breach into the building. Holmes would lead the minor through the Capitol building for the next hour. As Holmes and the minor entered, an alarm was blaring in the doorway, windows adjacent to the door were shattered, and glass was on the ground. After entering through the Senate Wing door, Holmes turned right walked towards the Crypt. She climbed a set of stairs near the Crypt and entered Rotunda at approximately 2:30 p.m. She subsequently proceeded to the Statuary Hall. While in the Statuary Hall, Holmes and the minor became part of a group that was yelling at Capitol police.

This group eventually advanced from Statuary Hall, moving past the police officers in order to attempt to gain access to the House Chamber. Open-source video depicts Holmes outside of the House Chamber for several minutes, part of the crowd that was shouting and seeking to advance towards the doors of the House Chamber and the Speaker's Lobby. Eventually, the rioters

that Ms. Holmes joined would advance to the Speaker's Lobby, where the shooting of Ashli Babbitt would occur.



*Image 2 – Screenshot from public source showing Holmes' near the House Chamber.*

However, Ms. Holmes does not appear to have advanced forward with the rest of the crowd she joined in Statuary Hall. Rather, after leaving the area near the House Chamber, Holmes walked to the Old Senate Chambers where open-source video footage captured her shouting at officers that were guarding a hallway and attempting to control the movement of rioters.



*Image 3 – Screenshot from public source showing Holmes near the Old Senate Chamber*

Holmes then returned to the Statuary Hall at approximately 2:50. While there, she stood at the front of a crowd that confronted police officers at approximately 2:56 p.m. As part of the crowd, she yelled at officers attempting to control the movements of the rioters. Approximately a minute later, she and her underaged relative walked away from the crowd.



*Image 4 – Screenshot from CCTV*

Holmes subsequently returned to the Rotunda at approximately 2:59 p.m.  While standing outside of the Rotunda, Holmes gave an interview to a new reporter as she held a "Stop the Steal" sign. Among other things, Holmes said, "So there are 5 million people that are patriots that are really angry about what's going on in our country with stealing the election.  We know the CCP, Italian officials, democrats, . . .  we know that many of these countries interfered in our elections and we are very angry and the patriots came in and I came in with [a teenaged family member]

5

and we got right down to the senate floor. [The teenaged family member] is getting a lesson in how to keep a republic…We will prevail." Exhibit 3.



*Image 5 – Screenshot from Public-Source Interview*

Holmes eventual was escorted out of the East Rotunda Doors of the Capitol by law enforcement at approximately 3:33 p.m. As she left the building, she continued to yell and address officers. In total, Holmes remained inside the Capitol for approximately one hour and ten minutes. After exiting the Capitol, Holmes remained on the Capitol steps and, using a megaphone provided by other identified rioters at the scene, addressed the group. Holmes announced into a loudspeaker that, "This is a spiritual battle as much as a political battle. I need some spiritual warriors!" before leading the crowd in chants and prayers.[2]  Exhibit 5.

---

[2] Video clip available at https://www.newsflare.com/video/402653/mob-incited-by-trump-storms-interior-of-capitol-including-offices-of-mcconnell-and-pelosi-in-terrifying-act#.



*Image 6 – Screenshot from Public Source*

*Defendant's Interview*

On December 13, 2021, Holmes gave a voluntary interview to the FBI in which she lied about entering the Capitol building on January 6, 2021. During the interview, she admitted to being in Washington, D.C. on January 6, 2021 but denied being part of the riot. She stated that she and her underaged relative were present in Washington DC on January 6, 2021. She further stated that they did see the crowd of people at the Capitol Building, but claimed that her and her underaged relative never went inside of the Capitol.

*The Charges and Plea Agreement*

On February 20, 2024, the United States charged Holmes by a two-count Information with violating 40 U.S.C. §§ 5104(e)(2)(D) and 5104(e)(2)(G). Holmes has entered into a plea agreement, pleading guilty to both counts in the Information. By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

**III.    Statutory Penalties**

Holmes now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Holmes faces up to six months of imprisonment and a fine of up to $5,000. Holmes must also pay restitution under the terms of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

**IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 30 days' incarceration, 36 months' probation, 60 hours of community service, and $500 restitution.

**A.    The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). Although Holmes is not alleged to have engaged in any violent act or destruction of property, she participated in a mob, a mob that was responsible for breaking past police officers to get closer to the House Chamber. *See United States v. Hatchet Speed*, 22-cr-00244 (TNM), Sentencing Tr. at 11 (Mar. 7, 2023) ("I think the defendant did engage in disruptive conduct. I make this finding not based on any shouting or other notable actions by the defendant alone, but, rather, for his knowing and intentional

8

participation in a mob that broke into the Capitol. As I see it, even though his conduct is isolation wasn't terribly disruptive, a mob in the Capitol is almost inherently disruptive, and the defendant intended this disruption by joining that mob.").

While assessing Holmes's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors.

Holmes was not a mere tourist. After entering the Capitol through a blaring alarm, she advanced deep into the Capitol. As Holmes explained in real time, her purpose was clear—she was there to show the legislators that the patriots were "really angry." *See* Exhibit 3("So there are 5 million people that are patriots that are really angry about what's going on in our country with stealing the election . . . we are very angry and the patriots came in and I came in with [a family member] and we got right down to the senate floor."). Efforts to normalize breaking into government buildings by overrunning and confronting police as part of a mob are simply of a different character than shouting out from the gallery during a speech, and this Court should firmly reject this suggestion when rendering its sentence.

In total, Holmes was in the Capitol Building for approximately one hour and eleven minutes on January 6, 2021. During that time, she was present at some of the most violent scenes in the Capitol. Specifically, she followed the leaders of a group that antagonized and then pushed past police officers in an attempt to gain access to the House Chamber. While Holmes did not directly engage in violent acts against those police officers, she knowingly rode the coattails of those who did. By doing so, Holmes and the minor in her company were able to penetrate deep into the Capitol and into the area just outside the House Chamber as members remained inside. Holmes knew it was wrong; and she was repeatedly in position to see officers assaulted; and she knowingly joined that violent mob in order to express her anger.

9

Holmes flatly lied to the FBI about her involvement in the riot. Holmes was interviewed on December 13, 2023, by a Task Force Officer ("TFO") with the Federal Bureau of Investigation. She claimed that she was in D.C. with a family member on January 6, 2021, but claimed that she was only there to look at colleges. She told the FBI that, although she saw a crowd of people at the Capitol Building, she never went inside. She told the FBI that she had to end the call, but would call back. She did not.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.      Holmes's History and Characteristics

The government is not aware of Holmes having prior criminal convictions. The government agrees that this weighs in Holmes favor.

### C.      The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was not a mere protest or trespass. It was a blatant disregard for the rule of law that was carried out with the power of a mob that overwhelmed law enforcement, and included countless assaults and rampant destruction of government property. Holmes knowingly joined this and was well-positioned to see the mob's conduct and its impact. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.").

### D.      The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

1. *General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37) (statement of Hon. Judge Nichols).,

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, the function of government. Indeed, it disrupted a central defining feature of our democracy—the *peaceful* transfer of power to a newly elected President. While Holmes was not violent and did not engage in acts of violence, Holmes was not peaceful—she willingly rode the coattails of others' violence to voice her anger. There is possibly no greater factor that this Court must consider.

2. *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. Although Holmes accepted responsibility by stipulating to all of the facts underlying her guilt, she has not taken any steps to denounce her words and actions on January 6, 2021. This is especially troubling when, while on the Capitol grounds, Holmes spoke extensively about her alleged reasons for being there, both by giving an interview that was shared widely, in which she claimed that she was trying to give "a

lesson on how to keep a republic," and by leading the crowd on the Capitol steps by using a megaphone.

Holmes was obviously proud of her illegal actions on January 6th. In her interview, she confirmed that she had entered the Capitol with "patriots," including her family member, a minor. She claimed that she and her minor family member "got right down to the Senate floor," so that her minor family member could "get a less in how to keep a republic." Undoubtedly this Court will rightly consider and wrestle with the tragic circumstances that surround the incarceration of a parent. However, the Court must also consider the impact of its sentencing decision in deterring unlawful conduct by those who have influence over the next generation that may lead our country. Holmes willingness to not only commit an illegal act in an attempt to stop the lawful transition of power, but to encourage a child to do the same, suggests that specific deterrence is especially necessary.

Finally, when questioned about her actions on January 6, Holmes brazenly lied and said she did not enter the Capitol. Since her decision to plead guilty, there is little to no indication that Holmes has any respect for the rule of law.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Holmes based on her own conduct and relevant characteristics, but should

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

give substantial weight to the context of her unlawful conduct: her participation in the January 6 riot.

Holmes has pleaded guilty to Counts One and Two of the Information, charging her with and disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D), and parading, demonstrating and picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

- *Anthime Gionet*, 1:22-cr-00132 (TNM): This Court sentenced the defendant to sixty days' incarceration, twenty-four months' probation, and $500 restitution after the defendant remained in the Capitol for over an hour, although, in that case, the defendant livestreamed much of his time in the Capitol, entered senate offices, and yelled at Capitol police officers. Holmes' conduct is comparable, if not worse, than Gionet's. Holmes engaged in similar activities but did so while bringing a minor along with her.

- *Angel Villanueva*, 1:24-cr-00016 (TNM): This Court sentenced the Defendant to twenty-four months' probation, four months' home confinement, and $500 in restitution after the defendant entered the Capitol through the Senate Wing doors, remained in the Capitol for thirty-one minutes. This is less than half of the time that Holmes was in the Capitol. After exiting the Capitol, Villanueva remained on the Upper West Terrace and joined other rioters in confronting police officers. Similarly, Holmes remained on the Capitol steps and gave a speech to the assemble rioters.

- *Anthony Scirica*, 1:21-cr-00457 (CJN): Judge Nichols sentenced the defendant to 15 days' incarceration and $500 in restitution.  The defendant walked through the Statuary Hall towards the House Chamber, like Holmes in this case, and remained in the Capitol for thirty-one minutes. Holmes was in the Capitol more than twice as long. And although, in that case, Judge Nichols found that the defendant had shepherded other rioters through the Capitol. Holmes did not shepherd other rioters, but she did bring a minor into the Capitol although she knew the crowd was attempting to stop the certification of the presidential election.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012).  The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).  "[D]ifferent district courts can and will sentence

differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b).  At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3).  *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here.  The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Holmes must pay $500 in restitution, which reflects in part the role Holmes played in the riot on January 6.[5]  Plea Agreement ¶ 11.  As the plea agreement reflects,

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can

15

the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023.  *Id.*  (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.)  Holmes's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities.

## VI. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors.  Balancing these factors, the government recommends that this Court sentence Defendant to thirty days' incarceration, 36 months' probation, 60 hours of community service, and $500 restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Holmes's liberty as a consequence of her behavior, while recognizing her acceptance of responsibility for her crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  s/ *Thomas Campbell*
Thomas D. Campbell
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Ave. NW
Washington, DC 20005

---

be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

Tel: (202) 262-7778
Email: thomas.campbell@usdoj.gov

Matthew Beckwith
Assistant U.S. Attorney
U.S. Attorney's Office
District of Columbia
601 D St. NW
Washington, DC 20579
Tel: (202) 252-7109
Email: mbeckwith2@usa.doj.gov

## **CERTIFICATE OF SERVICE**

On this 3rd day of May, 2024, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

        By:    s/ *Thomas Campbell*
                  Thomas D. Campbell
                  Trial Attorney
                  Criminal Division, Fraud Section
                  U.S. Department of Justice
                  1400 New York Ave. NW
                  Washington, DC 20005
                  Tel: (202) 262-7778
                  Email: thomas.campbell@usdoj.gov

                  Matthew Beckwith
                  Assistant U.S. Attorney
                  U.S. Attorney's Office
                  District of Columbia
                  601 D St. NW
                  Washington, DC 20579
                  Tel: (202) 252-7109
                  Email: mbeckwith2@usa.doj.gov